UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 11 |
| | ) | |
| AMIT GAURI | ) | CASE NO. 21 B 3680 |
| | ) | |
| DEBTOR. | ) | HON. JANET S. BAER |

### NOTICE OF MOTION

TO: See Attached List

PLEASE TAKE NOTICE that on **Wednesday, August 11, 2021** at **1:00 PM**, I will appear before the Honorable Janet S. Baer, or any judge sitting in her place, and present the **U.S. Trustee's Motion to Convert Debtor's Chapter 11 to Chapter 7 or in the Alternative, to Appoint a Chapter 11 Trustee,** a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/.  Then enter the meeting ID and password. To appear by telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is **160 731 2971** and the password is **587656**. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

/s/ M. Gretchen Silver
M. Gretchen Silver, Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn, Room 873
Chicago, Illinois  60604
(312) 353-5054

1

## CERTIFICATE OF SERVICE

I, M. Gretchen Silver, Attorney, certify that I caused to be served copies of the **Notice of Motion and U.S. Trustee's Motion to Convert Debtor's Chapter 11 to Chapter 7 or in the Alternative, to Appoint a Chapter 11 Trustee** on the ECF Registrants shown below via the Court's Electronic Notice for Registrants and via First Class US Mail on all other entities shown at the address shown on attached *Exhibit 1* on June 22, 2021.

/s/ *M. Gretchen Silver*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

Paul M Bauch      pbauch@bmlawllc.com,
Micah R Krohn      mkrohn@fgllp.com,
Patrick S Layng      USTPRegion11.ES.ECF@usdoj.gov
John A Lipinsky      lipinsky@ccmlawyer.com,
Kenneth A. Michaels      kmichaels@bmlawllc.com,
Todd J Ruchman      amps@manleydeas.com
Carolina Y. Sales      csales@bmlawllc.com,
James B. Sowka      jsowka@seyfarth.com,
Patrick T. Wallace      wallace.patrick@gmail.com,
Martin J Wasserman      mwasserman@carlsondash.com,
Paul Yovanic Jr.      pyovanic@seyfarth.com,

**Parties Served via U.S. First Class Mail:**

*See Exhibit 1*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

    AMIT GUARI,

              Debtor(s).

Case No.: 21 B 3680
Chapter 11

## **CERTIFICATE OF SERVICE**

I, Guadalupe Bolanos, certify as follows:

I am over the age of 18 and not a party to this bankruptcy case.

On July 20, 2021, as directed by the Office of the United States Trustee, I served a true and correct copy of the following documents upon the parties listed on the attached service list at the addresses shown and by the mode of service thereon indicated:

US TRUSTEE MOTION TO CONVERT OF APPOINT CHAPTER 11 TRUSTEE

EXHIBITS A-1

EXHIBITS A-2

PROPOSED ORDER-TRUSTEE

PROPOSED ORDER-CONVERT

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed and Dated: July 20, 2021

*Guadalupe Bolanos*

Guadalupe Bolanos
BMC Group, Inc.
Approved Bankruptcy Notice Provider
3732 W 120th Street
Hawthorne, CA 90250
info@bmcgroup.com
888.909.0100

**UST - EXHIBIT 1**

# Certificate of Service
## In re: Amit Gauri

### Exhibit A - Certificate of Service

| Svc Lst | Name and Address of Served Party | Mode of Service |
| --- | --- | --- |
| 320 | Amit Gauri , 330 West Concord Place, Chicago, IL, 60614 | **First Class** |
| 320 | JPMorgan Chase Bank, N.A. , c/o Manley Deas Kochalski LLC, P.O. Box 165028, Columbus, OH, 43216-5028 | **First Class** |
| 320 | Tiferet Properties, LLC - Series E , c/o COGENCY GLOBAL INC., registered agen, 600 SOUTH SECOND ST, SUITE 404, Springfield, IL, 62704 | **First Class** |
| 320 | Forestview Management, LLC , 320 Neapolitan Way, Naples, FL, 34103 | **First Class** |
| 320 | JPMorgan Chase Bank, N.A. , National Bankruptcy Department, P.O. Box 29505 AZ1-5757, Phoenix, AZ, 85038-9505 | **First Class** |
| 320 | Heritage FS, Inc. , 1381 S. Crescent Drive, P.O. Box 339, Gilman, IL, 60938 | **First Class** |
| 320 | Angela Story , Berrien County Assessor, 8916 M-140, Berrien Center, MI, 49102 | **First Class** |
| 320 | Apple Credit Card/Goldman Sachs , Salt Lake City Branch, Lockbox 6112, PO Box 7247, Philadelphia, PA, 19170 | **First Class** |
| 320 | JPMorgan Chase Bank, N.A. , s/b/m/t Chase Bank USA, N.A., c/o Robertson, Anschutz & Schneid, P.L., Boca Raton, FL, 33487 | **First Class** |
| 320 | Tiferet Properties, LLC - Series E , 2210 Jackson St., Unit#404, San Francisco, CA, 94115 | **First Class** |
| 320 | Mark Reckling , 10301 Enterprise Way, Sturtevant, WI, 53177 | **First Class** |
| 320 | Laborers' Pension Fund and and Laborers, Office of Fund Counsel, 111 W Jackson Blvd., Suite 1415, Chicago, IL, 60604 | **First Class** |
| 320 | Jennifer Graham Gauri , 330 W. Concord Pl., Chicago, IL, 60613 | **First Class** |
| 320 | Chicago & Vicinity Laborers&#039; District C, 11465 Cermak Rd., Westchester, IL, 60154 | **First Class** |
| 320 | Parent Petroleum, Inc. , 3340 West Main Street, St Charles, IL, 60175 | **First Class** |
| 320 | JPMorgan Chase Bank, National Association , Chase Records Center, Attn: Correspondence Mail, Monroe, LA, 71203 | **First Class** |
| 320 | Faegre Drinker Biddle & Reach LLP , Attn: Dan Collins, 191 N. Wacker #3700, Chicago, IL, 60606 | **First Class** |
| 320 | Richard Donofrio , 75 NE 5th Avenue - Unit P, Delray Beach, FL, 33483 | **First Class** |
| 320 | JPMorgan Chase Card Services , P O Box 15369, Wilmington De, 19850 | **First Class** |
| 320 | JP Morgan Chase Bank, N.A. Home Lending , 3415 Vision Drive OH4-7214, Columbus, OH, 43219-6009 | **First Class** |
| 320 | JPMorgan Chase Bank, N.A. , Mail Code LA4-6475, 700 Kansas Lane, Monroe, LA, 71203 | **First Class** |
| 320 | Black Dog Chicago, LLC , 4226 Lawndale Ave., Lyons, IL, 60534 | **First Class** |
| 320 | PNC Bank, National Association , Bradley M. Krieschen, One North Franklin, Chicago, IL, 60606 | **First Class** |
| 320 | Inder Gauri , 1611 W. Rosehill Ave., Chicago, IL, 60660 | **First Class** |
| 320 | Heritage FS, Inc. , 1381 S. Crescent, Unit 2, Gilman, IL, 60938 | **First Class** |
| 320 | David Graham , 2472 Emerald Lane, Libertyville, IL, 60046 | **First Class** |
| 320 | Peter Mancini , 28W165 Belleau Dr., Winfield, IL, 60190 | **First Class** |
| 320 | JP Morgan Chase Auto , PO Box 901003, Fort Worth, TX, 76101 | **First Class** |

**UST - EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 11 |
| | ) | |
| AMIT GAURI | ) | CASE NO. 21 B 3680 |
| | ) | |
| | ) | HON. JANET S. BAER |
| DEBTOR. | ) | Hearing: Aug. 11, 2021, 1:00 p.m. |

**U.S. TRUSTEE'S MOTION TO CONVERT DEBTOR'S CHAPTER 11
TO CHAPTER 7 OR IN THE ALTERNATIVE, TO APPOINT
A CHAPTER 11 TRUSTEE**

Patrick S. Layng, the United States Trustee for Region 11, by and through his undersigned counsel, M. Gretchen Silver, moves this Court for the entry of an order either appointing a chapter 11 trustee pursuant to Bankruptcy Code Section 1104(a) or, in the alternative, converting this case to a chapter 7 pursuant to Bankruptcy Code Section 1112(b).  In support of its motion, the U.S. Trustee states:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and IOP 15(a) and Local Rule 40.3.1 of the United States District Court for the Northern District of Illinois.

2.      Movant is the U.S. Trustee for the Northern District of Illinois and is charged with supervising the administration of bankruptcy cases under 28 U.S.C. § 586(a).  The U.S. Trustee makes this request pursuant to the authority granted to him under 11 U.S.C. § 1112(b) or in the alternative, 11 U.S.C. § 1104(a).

1

## PRELIMINARY STATEMENT

3.    The U.S. Trustee will establish that Debtor is not trustworthy, has irreconcilable conflicts of interest between his personal and business interests, and does not appear to be satisfying his fiduciary and statutory duties to creditors.  Further, Debtor does not have a history of successful past performance in connection with Black Dog and the Subsidiaries.  Some of the Debtor's creditors and the U.S. Trustee have lost confidence in Debtor's ability to act in the best interest of this estate and its creditors, which supports the appointment of a trustee.  In light of the facts developed to date in this case, a trustee should be appointed or, in the alternative, the case should be converted the Chapter 7.

## BACKGROUND AND DEBTOR'S CONDUCT

4.    On March 22, 2021 (the Petition Date), Amit Gauri, (the Debtor) filed his voluntary petition under Chapter 11 of the Bankruptcy Code.  His most recently filed Schedule D reflects secured debt of approximately $1,732,000 and the most recently filed Schedule F reflects unsecured debt of approximately $8,544,000.

### A.  *Gauri's conduct in Black Dog Precludes him from serving as a DIP in this case*[1]

5.    His personal case is related to that of *Black Dog Chicago, LLC* (19 B 28245)(Black Dog), for which Debtor was the President.  Black Dog is a holding company of which Debtor owns approximately 80% through a wholly owned LLC.  Black Dog owns and controls several subsidiaries: Black Dog Petroleum (Petroleum), Black Dog Foods (Foods), and Black Dog

---

[1]    The facts set forth in this pleading do not constitute the universe of facts related to Gauri's misconduct in connection with the Black Dog case (whether before or after the trustee was appointed), and upon which the U.S. Trustee relies for this motion.  To the extent necessary, the U.S. Trustee will introduce evidence relating to Gauri's extensive self-dealing, concealment and other improper conduct, much of which was included in Parent's or the U.S. Trustee's pleadings in the Black Dog case related to the appointment of a trustee and/or litigation over Black Dog's disclosure statement and unconfirmed chapter 11 plan.

Solutions (Solutions)(collectively, the Subsidiaries).    All revenue generation occurs at the subsidiary level and is supposed to flow up to Black Dog pursuant to an Operating Agreement. The Subsidiaries are the proposed funding source for Black Dog's proposed reorganization.

6.    Debtor is also responsible for operating the Subsidiaries.  Specifically, Debtor's involvement in Petroleum qualifies it as a Minority Business Enterprise (MBE), which qualifies Petroleum for certain business opportunities that it might lose if the Debtor were terminated or removed from Petroleum's operations and/or ownership.

7.    One of Debtor's and Petroleum's creditors, Parent Petroleum (Parent), a pre-petition judgment creditor of Debtor (and Black Dog),[2] learned of certain questionable transactions undertaken by the Subsidiaries, Black Dog and the Debtor, which transactions were taken at the direction of the Debtor and were characterized as "self-dealing" by Parent because they directly benefited the Debtor and many of Debtor's insiders and not Black Dog or the Subsidiaries.  Based in part on these self-dealing transactions, Parent filed a motion to convert or appoint a trustee in Black Dog, which motion was fully briefed and set for trial in September 2020.

8.    On the eve of trial on September 30, 2020, Debtor, on behalf of himself, Black Dog and the Subsidiaries, consented to be replaced by a chapter 11 trustee in Black Dog.  The Court appointed Fran Gecker (Trustee) as the chapter 11 trustee.  Debtor continued to operate the Subsidiaries pursuant to the operating agreement with the Trustee.

9.    Even *after* the court appointed the Trustee, the creditors, the Trustee and the U.S. Trustee continued to discover additional examples of Debtor's failure as Black Dog's President to satisfy his fiduciary duties to Black Dog's creditors and to fully and accurately disclose Black Dog's creditors and other financial information relevant to its bankruptcy.  For example,

---

[2]    Parent filed a Complaint under 523/727 against Debtor on June 28, 2020, Adv. 21 A 106.

a.   PPP for Black Dog subsidiaries – Debtor obtained PPP loans for the Subsidiaries. In order to obtain those loans, Debtor executed applications which misrepresented the fact that their ownership was not in bankruptcy.

b.   EIDL for Black Dog – Debtor applied for and obtained an EIDL loan for Black Dog while in Chapter 11 without obtaining the necessary court approval or disclosing the request or receipt of funds in any of the financial reports filed with the court.

c.   Southwind Industries, Inc. – Debtor failed to disclose that Petroleum has an undisclosed factoring agreement with Southwind that heavily encumbers Petroleum's revenues, decreasing cash available to Black Dog with which to reorganize. The Trustee and creditors have also discovered that Petroleum has other business relationships with Southwind that were previously undisclosed.

d.   Ryder Truck Rental, Inc. – As recently as June 2021, Black Dog creditors, the Trustee and the U.S. Trustee learned about yet another undisclosed creditor when Ryder filed a motion for stay relief. Black Dog, through Debtor, failed to disclose in Black Dog's schedules or at any time before Ryder filed its motion for stay relief, the lease with Ryder for nine (9) vehicles.

10.   When the Debtor filed this case in March 2021, he disclosed that he caused Petroleum to pay his proposed bankruptcy counsel's retainer of $20,000 plus his filing fee of $1,717. Debtor made this payment in violation of the operating agreement with the Trustee and without consultation with the Trustee. To date, based on information and belief, the retainer paid by Petroleum remains with proposed counsel.

11.   Based on Debtor's failure to comply with the original operating agreement with the Trustee, the Trustee requested that the court modify the operating agreement under which Debtor

4

continued his role in the Subsidiaries, to put more controls in place. See Black Dog docket #390.
The court modified the operating agreement on May 5, 2021. Black Dog docket #400.

12.    In addition to the foregoing, the Trustee has determined, in her business judgment,
that Black Dog's bankruptcy case should be converted to a chapter 7. The Trustee's motion to
convert the Black Dog case has been continued from time to time and is fully briefed.

**B. Gauri's conduct in this case precludes
him from continuing to serve as a DIP**

13.    Meanwhile, at the Debtor's Section 341 meeting, Debtor appeared and testified.
The meeting began on April 27 and continued to May 26, 2021. The Debtor testified for
approximately three hours. A transcript is attached as Ex. A.1 and A.2. Among other things, the
Debtor testified about actions that he took and transactions that he entered in the weeks before he
filed for bankruptcy.

14.    Debtor acknowledged that the week before he filed for bankruptcy, he (and his non-
filing spouse) granted a second mortgage on their Michigan house (Ex. A.2, p.28 line 21 – p. 29,
line 25), which likely erased any equity he may have had in the property.

15.    The Debtor testified that the proceeds from the second mortgage, which secures a
$500,000 line of credit, went to AGPD Paving LLC, a co-borrower and another non-debtor
company partially owned by the Debtor, which he formed after Black Dog filed for bankruptcy.
Debtor does not appear to have used the funds for the benefit of his personal creditors.[3] Further
investigation may reveal that the transaction may be avoided as either a preference or fraudulent
transfer.

16.    On April 27, 2021, Debtor testified that the balance on the line of credit was

---

[3] Debtor granted the second mortgage to Forestview Management LLC, which, based on information and belief and
Debtor's testimony, is related by common ownership or affiliation to Southwind, the undisclosed creditor in the Black
Dog case which has also been investigating a potential purchase of Black Dog. Ex. A.2 p. 32 line 11 – 21.

approximately $250,000.  Ex. A.1, p.34 line4 – line 7.  On May 26, Debtor testified that the balance on the line of credit was approximately $400,000.  Ex. A.2, p. 35 line 18 – 22.  -

17.    During his 341 testimony, it became apparent that the Debtor's personal expenses were not fully disclosed on his initial Schedule J.  Ex. A.1, p. 50 line 5 – p. 51 line 11.  After inquiry from the U.S. Trustee, Debtor amended Schedule J on May 7, 2021 (dkt. #34) and it now reflects that his current *net* monthly income is $61.56.  The Debtor's net income is insufficient to reorganize his personal liabilities.

18.    Debtor failed to file his personal 2019 and 2020 tax returns and the 2020 tax returns for Black Dog, LLC,[4] making it impossible to fully assess the financial situation of either the Debtor or Black Dog.  Debtor believes he will owe taxes according to his 341 testimony, but he failed to list either the Illinois Dept. of Revenue or the I.R.S. as creditors.  Ex. A.1, p. 5 line 14 – 18.

19.    Despite having testified at his initial 341 meeting in April 2021 that he intended to retain "RSM" as his accounting firm and that the firm was working on Debtor's and Black Dog's tax returns, to date, Debtor has failed to file an application to retain RSM and no tax returns have been filed.  Ex. A.1, p.5 line 19 – p. 6 line 2.

20.    Debtor initially failed to disclose an unencumbered Maserati about which he had previously testified in the Black Dog chapter 11.  Debtor disclosed his ownership interest in the luxury vehicle only after the U.S. Trustee questioned why it was not listed.

21.    At his 341 meeting, Debtor testified that in the two years before filing, he transferred funds from Petroleum to his personal bank accounts and paid those funds to certain subsidiary employees, without deducting withholding taxes or other necessary expenses.  Ex. A.1

---

[4]    Black Dog's 2020 tax returns were filed on or about July 7, 2021 after the Court ordered that they be filed by that date.

p. 64 – 68; Ex. A.2 p. 6 – p. 19.  Yet the Debtor did not list Petroleum as a creditor for these transactions, nor did the Debtor know whether there is a corresponding debt from Debtor recorded in Petroleum's books and records.  Debtor's explanation for these payments to employees was dubious and vague, reflecting a lack of familiarity with his own financial affairs (or a willingness to be forthright about same). Debtor explained loosely that the payments were made to boost employee morale and retention, but the Debtor was unable to explain why he used this procedure or how it addressed those issues.

22.     Debtor's schedules reflect several personal loans from friends and business acquaintances (Personal Loans).  Debtor testified that the Personal Loans are not reflected in any writings other than activity on bank statements.  Debtor testified that he does not maintain a spreadsheet or other written accounting of the Personal Loans he has received and payments he has made thereon.  He testified that he keeps tracks of them "off the top of his head."  Ex. A.1 p.18 line 6 -21.

23.     Debtor further testified that he loaned at least some of the Personal Loans proceeds to AGPD (AGPD Loans).  However, Debtor does not list an account receivable from AGPD on his schedules.  Debtor testified that he caused AGPD to repay the AGPD Loans to himself *in full* in the months or weeks before he filed (Ex. A.2 p. 18, line 23 – p. 10 line 5), but he has not explained how he used those proceeds.  Indeed, Debtor testified that he did not repay or make payments on the Personal Loans with the proceeds allegedly received from AGPD.  Ex. A.1 p.45 line 2 - line 10.  Again, Debtor has no accounting for his personal debt, besides bank statements, to support his testimony.

24.     Debtor disclosed transfers to AGPD in his Amended Sofa (Docket #35) but did not disclose that the transfers were loans.  The descriptions of the transfers were not loans but

7

"business operations." These disclosures are at odds with Debtor's sworn testimony at his meeting of creditors.

25.     Debtor filed his May Monthly Operating Report on June 21, 2021 (Docket #42). Debtor's receipts totaled approximately $7,300 and the ending balance was approximately $4,400. However, the May MOR reflects neither a mortgage nor a rent payment (both approximately $6,000/month). Further, the bank statements reflect that Debtor's current household expenses are not consistent with the amended Schedule J expenses. His actual expenses, especially in certain categories such as entertainment/food, significantly exceed his budget. If both rent and mortgage payments had been made (approximately $12,000 total), the MOR would have shown a significant loss, approximately $8,000, for the month of May. The May MOR reflects Debtor's inability to confirm a feasible chapter 11 plan.

26.     In light of Debtor's failures to fully satisfy his duties under the Bankruptcy Code as identified above, in both this case and in Black Dog, the U.S. Trustee has established that this Court should either appoint a chapter 11 trustee under Section 1104(a)(1) or (2) or convert this case to a case under chapter 7, either of which is in the best interest of Debtor's creditors.

### **ARGUMENT**

27.     Whether considered collectively or independently, there are numerous reasons why the Court should appoint a trustee or the Debtor's case should be converted to a case under chapter 7. The Debtor's pattern of breaching his fiduciary duties and of concealment/failure to disclose warrant relief in this case. Each basis for relief will be addressed in turn, and any one of them standing alone is sufficient.

8

## **A TRUSTEE SHOULD BE APPOINTED UNDER SECTION 1104(a)**

28.     There are two independent statutory bases for appointing a trustee.  First, "the court shall order the appointment of a trustee … for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause …"  11 U.S.C. § 1104(a)(1).  Second, the court "shall order the appointment of a trustee … if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate …"  11 U.S.C. § 1104(a)(2).

29.     A determination of cause is within the discretion of the court, and due consideration must be given to the various interests involved in the bankruptcy proceeding. *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill 1994).

30.     The ability of a creditor or other party in interest to seek appointment of a trustee under Section 1104 "'represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession.'"  *In re Sanders,*  2000 WL 329574, at *3 (Bankr. N.D. Ill. Mar. 2, 2000) (quoting *In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (Bankr. N.D.Ill. 1994)).   "[I]n the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of the creditors are served.'"  *In re Suncruz Casinos,* 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003).  Under both subsections of Section 1104(a), the court "must make [a] fact-sensitive determination on a case-by-case basis," and the court "may examine both pre- and post- petition conduct."  *Sanders,* 2000 WL 329574, at *3.  *Accord In re Oklahoma Refining Co.,* 838 F.2d 1133, 1136 (10th Cir. 1988) ("prepetition activity may be considered as part of a § 1104 determination").

31.     Section 1104(a)(2) establishes a flexible standard for appointment of a trustee even

when no cause exists if it is in the best interest of creditors. *Id*. Factors under this subsection "are diverse and in essence reflect the practical reality that a trustee is needed." *In re Sharon Steel Corp*., 86 B.R. 455, 458 (Bankr. W.D. Pa. 1998), subsequently aff'd, 871 F.2d 1217 (3rd Cir. 1989).

32.     Because "[t]hese are two distinct and independent provisions[,] the court may order the appointment of a trustee pursuant to either 1104(a)(1) or 1104(a)(2)[] and is not required to consider both provisions together." *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019). Under either provision, the court recognizes that "appointment of a Chapter 11 trustee is an extraordinary remedy." *In re Waterworks, Inc.*, 538 B.R. 445, 465 (Bankr. N.D. Ill. 2015). However, if the court finds the requirements under either §1104 (a)(1) or §1104 (a)(2) to be met, then the court will appoint a trustee.

33.     The United States Trustee has the burden of proof under either § 1104(a)(1) or (a)(2) using the preponderance of the evidence standard.[5]   *In re Woodlawn Community Development Corp.*, 613 B.R. 671, 679 (N.D. Ill. 2020).

## CAUSE EXISTS FOR THE APPOINTMENT OF A TRUSTEE

### (i) Breach of fiduciary duty

34.     In Chapter 11 bankruptcy cases, debtors-in-possession are fiduciaries of the estate, and a breach of their fiduciary duties may constitute cause. *In re Sanders*, No. 99 B 9876, 200 WL 329574, at *4 (Bankr. N.D. Ill. Mar. 2., 2000). These obligations "include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995). To fulfill its duty of loyalty, a debtor-in-possession must "avoid self-dealing,

---

[5] Some courts apply a "clear and convincing" evidentiary standard. *In re Sillerman*, 605 B.R. at 638. The Northern District of Illinois applied a preponderance standard in 2020 after having previously applied a clear and convincing evidence standard as recently as 2015. *See In re Waterworks*. 538 B.R. at 464-65.

conflicts of interest and the appearance of impropriety." *Id*. A trustee will be appointed when the

debtor-in-possession is incapable of performing his fiduciary duties. *Id*. (citing *In re Russell*, 60

B.R. 42 (Bankr. W.D. Ark. 1985)).

35.     It is a fundamental premise under 11 U.S.C. § 1107 that in a Chapter 11 case, the

debtor-in-possession has all the rights and powers and shall perform all the functions and duties of

a trustee.  Chief among these duties is a fiduciary duty to creditors, equity security holders and the

estate as a whole.  *See e.g.*, *In re Bellevue Place Associates,* 171 B.R. 615,  623 (Bankr. N.D.Ill.

1994).

36.     As Judge Schmetterer found in *In re Bellevue Place Associates,* 171 B.R. at 623,

the fiduciary duty of the debtor-in-possession is to the estate, *not* to management or a certain group

of insiders.  The debtor-in-possession must act to benefit the estate and the parties in interest *as a

whole*.

37.     In *Bellevue Place,* the Court found that "such inability to fulfill fiduciary duties of

a debtor in possession is itself cause to appoint a trustee."  *Bellevue Place,* 171 B.R. at 624.  The

Court went on to find that the nature of the fiduciary duty of a debtor in possession is analogous

to the duty of care and loyalty that corporate fiduciaries owe to shareholders under state law.

38.     Judge Schmetterer explained the duty of loyalty in *Bellevue Place* as follows:

> The duty of loyalty includes the duty not to engage in self-dealing. *Id.*  This
> means that a fiduciary—the debtor-in-possession—is proscribed from
> acting solely in its self interest to the exclusion of the other interests which
> the debtor-in-possession has the fiduciary obligation to protect.  *Bellevue
> Place,* 171 B.R. at 625.

39.     Other districts and courts have found "cause" under 11 U.S.C. §1104(a)(1) to

appoint a trustee when the court discovered that the debtor-in-possession has been unable or

unwilling to maintain the fiduciary obligations owed to the estate.  *See, In re Suncruz Casinos,*

*LLC,* 298 B.R. 821 (Bankr. S.D. Fla. 2003)(The Court found that the Debtor's management had significant inherent conflicts of interest and focused on the lack of evenhandedness in dealings with insiders or affiliated entities vis-à-vis other parties.  The Court also considered the existence of pre-petition voidable fraudulent transfers in this case.); *In re Veblen West Dairy LLP,* 434 B.R. 550 (Bankr. D.South Dakota 2010) (The Court found that the pre-petition actions of the insiders were not evenhanded and were for the benefits of the insiders.  In addition, the Court focused on the fact that an independent entity was necessary to evaluate pre-petition preferences and fraudulent conveyances.  These factors tipped the scales in favor of the appointment of a trustee.)

### (ii) Conflict of interest

40.    Courts may find a conflict of interest, which can constitute cause for the appointment of a trustee, when the debtor has had inappropriate dealings with an entity in which the debtor has an interest.  *In re Sillerman*, 605 B.R. 631, 646 – 647 (Bankr. S.D.N.Y. 2019) (individual debtor not likely to bring avoidance actions against a family member or an entity in which the debtor has a substantial interest in a case that discusses several "causes" for the appointment of a trustee).

### (iii) Failure to maintain adequate books and records

41.    Additionally, the failure to keep adequate records and make prompt and complete reports justifies the appointment of a Chapter 11 trustee.  *See In re Oklahoma Ref. Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988); *see also In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983)("inherent in debtor's fiduciary obligations under the Code is the duty to file accurate financial reports disclosing all transactions involving estate assets…one of the most important functions of a debtor-in-possession is to keep the court and creditors informed…any failure to file accurate financial statements is an omission contributing to cause for appointment of a trustee.")

"Where a debtor fails to disclose material information to the Court and to creditors, the appointment of a chapter 11 trustee is appropriate…Misrepresenting the facts of a debtor's financial situation constitutes grounds for the appointment of a trustee." *In re Sanders*, 2000 WL 329574, at *4 (Bankr. N.D. Ill. Mar. 2, 2000)

#### (iv) Pre-petition conduct can constitute cause

42.     Pre-petition conduct or issues existing prior to filing a petition may also constitute cause under § 1104 (a)(1). *In re Ashley River Consulting*, 2015 WL 1540941, at *10 (Bankr. S.D.N.Y. 2015). For example, a previous failure to file taxes is an obvious and widely recognized example and constitutes "gross mismanagement." *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) ("[C]hronic failure to pay taxes" constitutes "gross mismanagement").

#### (v) Cause in individual Chapter 11s

43.     For an individual Chapter 11 bankruptcy, certain issues arising under § 1104 (a)(1) are more pervasive. For example, an individual Chapter 11 bankruptcy can lead to significant conflicts of interest that may warrant an appointment of a trustee. "A conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010). "[When] an individual Chapter 11 debtor remains in possession as a fiduciary of his estate and his creditors, …there is a heightened concern for an inherent conflict of interest that may not exist in the case of a corporate chapter 11 debtor." *In re Sillerman*, 605 B.R. at 647. Courts have recognized that "[t]emptation for self-dealing may be heightened in the case of an individual debtor whose natural instinct is to protect his own self-interest." *Id.* An individual in a Chapter 11 may be in debt to family members or businesses in which he is an owner. The debtor in possession may be disincentivized to pursue causes of action

13

that would benefit the estate. *Id.* (debtor refused to sue his own foundation and his wife despite it being in the best interest of the estate).

44.     In this case, the facts warrant the appointment of a Chapter 11 Trustee for cause as the U.S. Trustee has identified above at least five (5) independent grounds or instances of cause.

45.     The Debtor's selective, incomplete and unsubstantiated disclosures do not satisfy his required fiduciary obligations in this case, and mandate that he be removed as DIP.  The Debtor's attempt to foist the obligation to recreate his financial affairs upon other parties in interest is wholly improper, and is troubling given the Debtor's conduct in the Black Dog case and in this case to date.  In short, there is no meaningful way to assess the Debtor's affairs with the Debtor serving as the DIP.  By way of example, and not limitation, The Debtor failed to timely file tax returns for both 2019 and 2020.  Debtor failed to seek either the Trustee's or this Court's permission to make the distributions from Petroleum to Debtor's proposed counsel.  Debtor has failed to fully disclose his liabilities in his Schedules and Statement of Financial Affairs, and for example, concealed ownership of a Maserati.  Debtor testified at his 341 meeting that he does not keep books and records for his personal finances but tracks them mostly "in his head," which makes verification of his testimony and financial affairs exceedingly difficult for creditors, the Trustee and the U.S. Trustee.  Given that the Debtor voluntarily filed this case, that is unacceptable, and not how the system is designed to work.

46.     Appointment of a trustee in this case for cause is also supported by the self-dealing transactions and extensive failure to fully disclose matters relating to Black Dog's financial affairs. Further, some of the breaches of fiduciary duty in Black Dog appear to also be breaches of Debtor's fiduciary duty to his personal creditors.

47.     In light of Debtor's failure to fully and accurately disclose liabilities in his

Schedules and his failure to timely file 2019 and 2020 tax returns, he cannot remain as a debtor-in-possession for this estate and a trustee should be appointed.

48.     In this case, Debtor's pre and post-petition conduct demonstrates that a trustee is warranted. It is unclear how Debtor can discharge his fiduciary duties on the one hand to the estate, while discharging his fiduciary duties to Black Dog, the Subsidiaries and his other nondebtor businesses, such as AGPD on the other hand.  Debtor appears to be irreconcilably conflicted between the best interests of the creditors of each of the entities that he controls and a trustee should be appointed for cause.  Moreover, the Debtor's pre-petition conduct before being removed as Black Dog's DIP warrants relief in this case.  Debtor has proven himself to be ill-suited to serve as a fiduciary, and it will be prejudicial to all parties in interest in this case if he continues to serve in that role.

49.     For these reasons stated above, cause exists for the appointment of a trustee under Section 1104(a)(1).

## C.     The Appointment of a Chapter 11 Trustee under Section 1104(a)(2)

50.     Even if the Court does not find Debtor to have an inherent conflict of interest or other actions sufficient to establish "cause" under Section 1104(a)(1), the Court has wide discretion under Section 1104(a)(2), which sets forth a very flexible standard for the appointment of a trustee. The factors examined under Section 1104(a)(2) include: "(1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs."  *In re LHC, LLC,* 497 B.R. 281, 293 (Bankr. N.D.Ill. 2013).  Courts construing this subsection are not bound by rigid absolutes and may look to the practical realities and necessities of the record to determine whether the appointment of a trustee

is in the best interest of the estate." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010)(cite omitted).

## Lack of trustworthiness

51.     Lack of trustworthiness can relate to past conduct or present conduct. *See e.g.*, *In re Sillerman*, 605 B.R. at 652 (failure of debtor to file tax returns put trustworthiness in doubt); *In re New Orleans Paddlewheels, Inc.*, 350 B.R. 667, 678 (Bankr. E.D. La. 2006) (failure to disclose business interests indicates untrustworthy debtor). Moreover, dubious past predictions and promises of the debtor can indicate that the debtor-in-possession should be removed. *In re Sillerman*, 605 B.R. at 653. The court may also look to inconsistent "financial reporting, projections, and plans for reorganization." *Id.* Debtor has repeatedly filed documents in both Black Dog and this case that have been proven to be, at best, inaccurate. Similarly, his testimony at his 341 meeting did not align with the Schedules and Statement of Financial Affairs that he submitted under penalty of perjury. Such conduct draws into question the trustworthiness of the Debtor and supports the appointment of a trustee.

## Past and present performance

52.     Also militating in favor of a trustee under Section 1104(a)(2) is Debtor's past and present performance and his prospects for rehabilitation. Although his personal case is fairly new, Debtor's past performance in connection with Black Dog and his misrepresentations made about its financials and those of the Subsidiaries are well documented. Despite Debtor's consent to the appointment of the Trustee in Black Dog, Debtor failed to honor the initial operating agreement with the Trustee in several well documented ways. Further, the Subsidiaries' cash flow is significantly less than he represented it to be to the Trustee and creditors. Additionally, in this case, his pre-petition transactions and failure to fully and timely satisfy his duties as a debtor in

16

possession and fiduciary do not indicate likely future success for all of his creditors. His net monthly income according to his amended Schedule J is a mere $61.00. In light of the foregoing, reorganization appears to be highly unlikely.

53.     The U.S. Trustee has established that Debtor is not trustworthy, has irreconcilable conflicts of interest between his personal and business interests, and does not appear to be satisfying his fiduciary and statutory duties to creditors. Further, Debtor does not have a history of successful past performance in connection with Black Dog and the Subsidiaries. Some of the Debtor's creditors and the U.S. Trustee have lost confidence in Debtor's ability to act in the best interest of this estate and its creditors, which supports the appointment of a trustee.

54.     Based on the foregoing, the appointment of a trustee as an independent fiduciary under Section 1104(a)(2) is in the interest of creditors and is necessary to promote and protect the integrity of the bankruptcy system.

## IN THE ALTERNATIVE, DEBTOR'S CASE SHOULD BE CONVERTED TO CHAPTER 7

55.     In relevant part, Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause." *See* 11 U.S.C. § 1112(b)(1).

56.     Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. *See* 11 U.S.C. § 1112(b)(4)(A)-(P). This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4). *See In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); *In Matter of Strug-Division, LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007).

57.     "The court must convert a case to chapter 7 or dismiss the case if there is 'cause' to

17

do so" unless the debtor can establish one of the exceptions. *See In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). Once cause is established, the debtor has the burden of proving the required exceptions to fend off conversion or dismissal. *Id.* To avoid conversion or dismissal, the court must find "unusual circumstances" "establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11 U.S.C. §1112(b)(2). The debtor or another party must establish (A) there is a reasonable likelihood that a plan will be confirmed as provided for in sections 1121(e) and 1129(e) or within a reasonable time if those section do not apply **and** (B) "the grounds for converting or dismissing the case include an act or omission of the debtor other than paragraph [§1112(b)] (4A) – (i) for which there exists a reasonable justification for the act or omissions; and (ii) that will be cured within a reasonable period of time fixed by the court." *Id.*

i. **Cause Exists to Dismiss or Convert the Case**

58.    Section 1112(b)(4)(A) identifies "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" as a basis for finding "cause." Debtor's Monthly Operating Reports filed to date show that Debtor's expenses are not being paid in full each month. Specifically, his rent and mortgage, which total just over $12,000/month, are not being timely paid in full post-petition. Debtor's cash flow is insufficient to cover current expenses, much less provide a basis for repayment to creditors through a plan of reorganization. These accruing expenses are resulting in a continuing loss to the estate and support conversion of the case, especially since Debtor does not appear to have a reasonable likelihood of rehabilitation. Therefore, cause exists to convert this case.

59.    Section 1112(b)(4)(E) identifies "failure to comply with an order of the court" as another "cause" for conversion. Debtor failed to comply with the Order entered in the Black Dog

case covering the operations of the Subsidiaries under the supervision of the Trustee. Debtor admitted that he paid his bankruptcy counsel's retainer from a Subsidiary without consulting the Trustee, which violated the operating with the court appointed trustee, as set forth in this Court's order entered October 21, 2020, Docket #347. Such a failure to comply with a court order warrants cause for conversion of this case.

60.     Section 1112(b)(4)(B) identifies "gross mismanagement of the estate" as cause for conversion. The Debtor has admitted that he transferred funds from Petroleum, one of the Subsidiaries, to his proposed bankruptcy counsel for his personal benefit without consulting the Black Dog Trustee and in violation of the operating agreement between Black Dog and the Subsidiaries. Further, in the week before he filed for bankruptcy, Debtor granted a second mortgage on his Michigan property, which appears to have primarily benefited AGPD, a nondebtor company that he owns. Both of those actions, taken immediately before he filed his chapter 11, are examples of gross mismanagement of his business and personal financial affairs, knowing that he was going to file for bankruptcy. *See* 11 U.S.C. § 1112(b)(4)(B); *In re Products Int'l Co.*, 395 B.R. 101, 111 (Bank. N.D. Ariz. 2008); *see also, In re Cloisters of Brevard, Inc.*, 117 B.R. 722, 723-24 (Bankr. M.D. Fla. 1990) (improper transfers of debtor's property were breaches of fiduciary duty and cause to convert); *In re E. Paul Kovacs and Co., Inc.*, 16 B.R. 203, 205-06 (Bankr. D. Conn. 1981) (diminution of estate due to affiliates' use of debtor's property coupled with inability to reorganize constituted cause). These examples, as well as the other issues identified above establish cause for conversion of this case.

## CONCLUSION

61.     The U.S. Trustee has established by a preponderance of the evidence that, whether considered collectively or independently, there are numerous reasons why the Court should

appoint a trustee or the Debtor's case should be converted to a case under chapter 7.  The Debtor's pattern of breaching his fiduciary duties and of concealment/failure to disclose warrant relief in this case.

**WHEREFORE**, The U.S. Trustee respectfully requests that the Court order the appointment of a trustee or, in the alternative, convert this case to a Chapter 7 and for any further relief that this Court deems just and equitable.

RESPECTFULLY SUBMITTED:
PATRICK S. LAYNG
UNITED STATES TRUSTEE

DATED: <u>July 20, 2021</u>                 By: <u>/s/ *M. Gretchen Silver*</u>
                                            M. Gretchen Silver, Attorney
                                            OFFICE OF THE U.S. TRUSTEE
                                            219 S. Dearborn, Room 873
                                            Chicago, Illinois  60604
                                            (312) 353-5054